**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Danny M. RIGSBY, Defendant–Appellant.**

No. 93–6594.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 2, 1994.

Decided Jan. 19, 1995.

---

William Cohen, Asst. U.S. Atty. (argued), Debra Teufel Phillips, Asst. U.S. Atty. (briefed), Nashville, TN, for plaintiff-appellee.

Thomas W. Watson, Asst. Federal Public Defender (briefed), Isaiah Grant (argued and briefed), Nashville, TN, Danny M. Rigsby, Talladega, AL, for defendant-appellant.

Before: LIVELY, JONES, and DAUGHTREY, Circuit Judges.

LIVELY, Circuit Judge.

The question in this case is whether the district court abused its discretion in failing to conduct an inquiry into a suggestion of possible juror bias. After a thorough examination of the record, and upon consideration of the briefs and oral arguments, we conclude that the court did not commit reversible error. Accordingly, we affirm.

## I.

On February 2, 1992, the defendant Danny Rigsby purchased a rifle from Clarence Dean Brown at a flea market in Dallas, North Carolina. As part of the sales transaction, Rigsby filled out ATF Form 4473, which is required upon the sale of firearms. On this form, Rigsby stated he was not under indictment or information. Actually, however, he had been charged with a felony offense in April 1991 and later pled guilty on February 25, 1992. Based on the theory that Rigsby became a convicted felon on February 25, 1992, and later possessed the rifle on March 3, 1992, the government charged the defendant with being a convicted felon in possession of a firearm that had been transported in interstate commerce, in violation of 18 U.S.C. § 922(g)(1).

The defendant was tried by jury on September 1, 1993. Pursuant to local rules of the district court, the government filed a witness list with the court in advance of the trial. During voir dire, however, neither attorney inquired whether any of the jurors knew any of the witnesses even though the

trial judge did not restrict the questioning by either attorney.

In her opening argument, the prosecuting attorney referred by name to several witnesses whom the government would call in support of its case. Immediately following opening statements, during a short recess, one of the jurors told a marshal that she thought she might know some of the witnesses. The marshal informed the trial judge. Defense counsel then suggested to the judge that "it might be appropriate for the court to inquire as to who she knows, and how well, and what connection." The court declined to make any inquiry, explaining that the witness "talked to the marshal about it. She said she thinks she knows some of the witnesses, and she said was that going to be a problem. So he told her nobody asked her about it, so it is no problem." Defense counsel made no objection to the ruling and requested no other action by the court.

After the jury was sworn and counsel made opening statements, the government called the witnesses on its list, some of whose testimony had been outlined in its opening statement. First, Kenneth Pack, Sheriff of DeKalb County, Tennessee, testified that a man named Eddie Taylor had given a statement in which Taylor claimed he saw the defendant firing a gun on March 2 or 3, 1992. The Sheriff also stated that he recovered the rifle in question from the defendant's family. Second, Eddie Taylor himself testified that on March 3, 1992, he saw Danny Rigsby fire a weapon several times. Third, State Probation Officer Brenda Reed testified that she advised Danny Rigsby that as a convicted felon, federal law prohibited him from possessing or owning a rifle. She also stated that Rigsby signed a probation order containing this and other rules of probation on March 3, 1992. Steve Johnson, Chief Deputy of DeKalb County, testified that he was present at an interview when the defendant admitted owning the rifle, stating he bought it in North Carolina and brought it home to Tennessee. Finally, Julian Bomar, an agent with the ATF, testified that the defendant purchased the rifle and notified his brother when he brought it to Tennessee. The defense presented no witnesses, but attempted to expose inconsistencies in the government's proof by cross-examination.

The defense argued that the government failed to prove that Danny Rigsby was a convicted felon on the date or dates he possessed the weapon. The argument related to the date of his guilty plea and testimony about the dates on which various members of the defendant's family possessed the rifle. The attorney contended that Eddie Taylor's testimony did not agree with other witnesses and that Eddie Taylor was the only witness who placed the gun in the defendant's possession after his conviction.

The entire trial consumed less than one day and concluded with a guilty verdict. The jury was polled and then dismissed. The court appointed trial counsel to prosecute this appeal.

## II.

■ This case concerns the requirement that every defendant in a criminal case receive "a fair trial by a panel of impartial, 'indifferent' jurors," which is a "basic requirement of due process." *Irvin v. Dowd*, 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961) (quoting *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955)).

We have found no case exactly like the present one in which the only claim of jury "taint" arises from the fact that one juror thought she knew some of the witnesses and asked a court functionary if this would present a problem. Usually there has been some outside contact with one or more jurors or at least some extraneous information brought to the attention of jurors. The defendant seeks to bring this case within the rules formulated for, and applied to, those cases involving actual contact or extraneous information.

### A.

■ The landmark case is *Remmer v. United States*, 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954). In *Remmer*, the Supreme Court affirmed that juries in criminal cases must be free of outside influences and announced the procedure to be followed when a

party alleges that a jury has been subjected to such influences:

> In a criminal case, any private communication, contact, or tampering, directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties. The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant. *Mattox v. United States,* 146 U.S. 140, 148–50 [13 S.Ct. 50, 52–53, 36 L.Ed. 917]; *Wheaton v. United States,* 133 F.2d 522, 527.

> \* \* \* \* \* \*

> The trial court should not decide and take final action *ex parte* on information such as was received in this case, but should determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial, in a hearing with all interested parties permitted to participate.

*Id.* at 229–30, 74 S.Ct. at 451.

The facts in *Remmer* were far removed from those in the present case. During trial someone communicated with a juror who later became the foreman and suggested that the juror could profit by bringing in a verdict for the defendant. The juror related the incident to the judge who advised the prosecutor, but not defense counsel. *Id.* at 228, 74 S.Ct. at 450–51. When defense counsel learned of the contact, after trial, he made a motion for new trial and requested a hearing to determine the facts. The district court denied the motion and the court of appeals affirmed. The government confessed error in the Supreme Court and the Court reversed.

### B.

This court has not limited the *Remmer* requirements to cases in which there is a deliberate attempt to subvert the jury process in some way. See *United States v.* *Walker,* 1 F.3d 423 (6th Cir.1993) (highlighted transcripts of video taped deposition that jury heard were inadvertently sent to jury room with exhibits); *United States v. Cooper,* 868 F.2d 1505 (6th Cir.) (prosecutor's handwritten notes found their way into jury room), *cert. denied,* 490 U.S. 1094, 109 S.Ct. 2440, 104 L.Ed.2d 996 (1989). Rather, we require a *Remmer* hearing in all cases involving an unauthorized communication with a juror or the jury from an outside source that presents a likelihood of affecting the verdict. *Walker,* 1 F.3d at 429.

In *Tanner v. United States,* 483 U.S. 107, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987), the Supreme Court stressed the fact that a court may inquire into juror conduct following a verdict only with respect to allegations that the jury has been subjected to "extraneous influence." *Id.* at 117, 107 S.Ct. at 2746. This limitation is based on an exception to the common law rule prohibiting all jury testimony to impeach a verdict. This exception is now codified in Federal Rule of Evidence 606(b):

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, *except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.* Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes. (emphasis supplied).

We upheld a trial court's refusal to conduct an evidentiary hearing of the *Remmer* type in *United States v. Shackelford,* 777 F.2d 1141 (6th Cir.1985), *cert. denied,* 476 U.S. 1119, 106 S.Ct. 1981, 90 L.Ed.2d 663 (1986), upon concluding that the defendant failed to establish that any extraneous influences had

been brought to bear on the jury, even though a juror had talked with his wife during a break in deliberations. *Id.* at 1145. Similarly, in *United States v. Griffith,* 17 F.3d 865 (6th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 149, 130 L.Ed.2d 89 (1994), we concluded that the district court properly declined to hold an evidentiary hearing because the alleged misconduct of a juror did not involve an extraneous influence. In *Griffith* an alternate juror who was excused when deliberations began had attempted to discuss the case with a deputy marshal. The alleged misconduct of the juror was found to be "internal" and thus within the strictures of Rule 606(b).

In another recent case this court noted that "not all communications with jurors warrant a hearing for a determination of potential bias." *White v. Smith,* 984 F.2d 163, 166 (6th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 2367, 124 L.Ed.2d 273 (1993). Quoting *United States v. Walton,* 908 F.2d 1289, 1297 (6th Cir.), *cert. denied,* 498 U.S. 906, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990), we emphasized "*the extremely limited nature of the contact.*" *Id.* at 166 (emphasis in original). The *White* case involved a brief extraneous contact (spectator outburst as jury retired), which the trial judge considered harmless. Defense counsel objected to the jury's continuing deliberations, but waived an opportunity to poll the jury.

### C.

The facts upon which most of the decisions cited by the defendant are based do not remotely resemble the facts in the present case. In *United States v. Ramos,* 861 F.2d 461 (6th Cir.1988), *cert. denied,* 489 U.S. 1071, 109 S.Ct. 1353, 103 L.Ed.2d 820 (1989), the wife of a juror was seen embracing the wife of one of the defendants and spent time in the witness room conversing with the defendant and his wife. The juror told the judge upon interrogation that his wife had told him of these contacts. The trial judge did not interrogate the remaining jurors, but excused the one juror whose wife had been so active and accepted a verdict of guilty from the remaining eleven jurors. We held

that the judge had complied with *Remmer,* and affirmed the conviction. *Id.* at 466.

In *United States v. Sturman,* 951 F.2d 1466 (6th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 2964, 119 L.Ed.2d 586 (1992), a juror advised the judge that several jurors were disturbed by the fact that a defendant appeared to be drawing pictures of the jurors during trial. The judge asked the jurors whether the incident would affect their ability to remain fair and impartial. When the jurors responded that it would not, the judge resumed the trial without further inquiry and this court affirmed. We have previously outlined the alleged juror misconduct in other cases from this court cited by the defendant. See discussion in II–B of *Cooper, Shackelford* and *Walker,* also cited by the defendant Rigsby.

By and large the cases following *Remmer* that have particularized a trial court's duty when faced with allegations of extraneous influences on a jury have dealt with intentional improper contacts or contacts that had an obvious potential for improperly influencing the jury. *E.g., United States v. Pennell,* 737 F.2d 521 (6th Cir.1984) (five jurors contacted at home during period of deliberations by anonymous telephone caller who made threatening statements), *cert. denied,* 469 U.S. 1158, 105 S.Ct. 906, 83 L.Ed.2d 921 (1985); *United States v. Rugiero,* 20 F.3d 1387 (6th Cir.) (jurors became aware during deliberations of TV broadcast linking defense counsel to organized crime), *cert. denied,* —— U.S. ——, 115 S.Ct. 208, 130 L.Ed.2d 137 (1994); *United States v. Zelinka,* 862 F.2d 92 (6th Cir.1988) (spectator at trial made comments in presence of jurors on courthouse elevator that jurors considered threatening). In these and similar cases we have held that the allegations of impropriety required a full evidentiary hearing by the trial court.

### III.

In considering a claim that the fundamental right to trial by a fair and impartial jury may have been infringed, a trial judge must exercise judicial discretion to determine what steps, if any, are required to make certain that a jury has not been tainted. When there is a credible allegation of extra-

neous influences, the court must investigate sufficiently to assure itself that constitutional rights of the criminal defendant have not been violated.

Along with other courts, we have held that "[s]ince the trial judge is in the best position to determine the nature and extent of alleged jury misconduct, his decision on the scope of proceedings necessary to discover misconduct is reviewed only for an abuse of discretion." *Shackelford,* 777 F.2d at 1145 (citations omitted).

■ We find no abuse of discretion here. There was no contact with a juror. The only conceivable problem consisted of the possibility that a juror might have known one or more witnesses. Even though the government's witness list was available, the defense attorneys apparently did not consider acquaintance with a witness serious enough even to question the jury panel on the subject. The voir dire was extensive, and the judge asked all members of the panel if there was any reason they could not render a fair and impartial verdict based solely on the evidence heard during the trial. Every juror who served on the case indicated that he or she could, and would, make a verdict based solely on the evidence and instructions. And, after the jury returned its verdict, the judge caused the jury to be polled. Further, defense counsel never unequivocally requested the court to conduct an evidentiary hearing and did not make a motion for a mistrial.

In *Tanner,* the Supreme Court pointed out that a criminal defendant's "Sixth Amendment interests in an unimpaired jury ... are protected by several aspects of the trial process." 483 U.S. at 127, 107 S.Ct. at 2751. Voir dire was included in the listed protections. *Id.* When the trial court places no limitation upon counsel's voir dire questions, and counsel fails to inquire concerning possible relationships of jurors, we do not believe a tentative statement such as that made by the juror in this case requires any inquiry by the court. This case was tried in a rural community where it is likely that many of those involved had some acquaintance with each other. No presumption of juror misconduct can be drawn from this record.

## IV.

■ The defendant also argues that the trial judge should have asked the panel about their knowledge of witnesses. Rigsby cites two cases in support of his claim that the district court was required to ask prospective jurors during voir dire whether they were acquainted with witnesses whom the parties indicated they would call. Both cases are readily distinguishable. In *United States v. Washington,* 819 F.2d 221 (9th Cir.1987), the trial court refused, over objection by defense counsel, to ask whether jurors knew any of the government witnesses. The court conducted the entire voir dire and, thus, the defendants were precluded from inquiring at all. The present case is entirely different. The trial judge asked general qualifying questions and then gave the attorneys unrestricted right to continue voir dire. Neither of the defendant's attorneys asked any juror about knowledge of or acquaintance with the government's witnesses. As an indication of the thoroughness of the voir dire, it occupies 34 pages of the trial transcript and the government's proofs are contained in a mere 79 pages. The other Ninth Circuit case relied upon by the defendant also involved a trial judge who conducted the entire voir dire and refused to ask some of the questions submitted by the defendant. See *United States v. Toomey,* 764 F.2d 678 (9th Cir.1985), *cert. denied,* 474 U.S. 1069, 106 S.Ct. 828, 88 L.Ed.2d 799 (1986). We have found no case holding it is reversible error for a trial court that permits counsel to conduct voir dire, and does not prevent counsel from asking about prior acquaintance with witnesses, to fail to make such an inquiry sua sponte.

**AFFIRMED.**