RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 06a0353a.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

　　　　　　　*Plaintiff-Appellee,*

　　　　*v.*

LAWRENCE W. LLOYD,

　　　　　　　*Defendant-Appellant.*

No. 04-4014

Appeal from the United States District Court
for the Southern District of Ohio at Dayton.
No. 03-00161—Thomas M. Rose, District Judge.

Argued: June 8, 2006

Decided and Filed: August 18, 2006[*]

Before: MARTIN, NORRIS, and McKEAGUE, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Shawn T. Kelly, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Dayton, Ohio, for Appellant. Benjamin C. Glassman, ASSISTANT UNITED STATES ATTORNEY, Cincinnati, Ohio, for Appellee. **ON BRIEF:** Shawn T. Kelly, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Dayton, Ohio, for Appellant. Benjamin C. Glassman, ASSISTANT UNITED STATES ATTORNEY, Cincinnati, Ohio, for Appellee.

　　　McKEAGUE, J., delivered the opinion of the court, in which NORRIS, J., joined. MARTIN, J. (pp. 8-9), delivered a separate opinion concurring in part and dissenting in part.

_____

## AMENDED OPINION

_____

　　　McKEAGUE, Circuit Judge. A jury convicted Lawrence W. Lloyd of armed bank robbery and using a firearm during a crime of violence. Lloyd was sentenced to consecutive terms of forty-six and eighty-four months. Lloyd filed a timely appeal arguing that the second count of the indictment was insufficient or duplicitous, certain evidentiary rulings made during his trial were an abuse of discretion, and the district court improperly denied his motion to inquire of a juror. For the following reasons, we affirm the district court's rulings and uphold the conviction.

_____

[*] This decision was originally issued as an "unpublished decision" filed on August 18, 2006. On August 29, 2006, the court designated the opinion as one recommended for full-text publication.

## I. BACKGROUND

At around 11:15 a.m. on November 6, 2003, a man wearing a black ski mask over his face entered a branch of the National City Bank located in Dayton, Ohio. Brandishing a small, black gun, the man yelled "get down" as he ran toward the teller line. He then vaulted the teller counter and picked up the head teller by her shoulder. He told her to take him to the vault and warned: "It's only money. Don't do anything stupid." She complied, taking him inside the main vault and into an interior one, which she accessed with a key. At gunpoint the head teller entered a code on the key pad that unlocked the bank branch's cash supply. The suspect then told her to get down; she did; and he reached inside the vault, emptying its cash, which was strapped together in 100-bill bunches, into a blue pillowcase he was carrying. After trying and failing to jump back over a counter, the gunman left through a door.

Dayton police officers, responding quickly to the 911 calls from the bank, spotted Lloyd, sitting alone at a bus stop near the bank shortly after the robbery. Based on their initial investigation, the police determined that Lloyd was a suspect and apprehended him. In the course of the arrest the police found a black gun in the waistband of Lloyd's pants. They also found a shopping bag containing a blue pillowcase, filled with nearly $35,000 in strapped cash, sitting at Lloyd's feet. In the course of the investigation, the police recovered a shoe impression from the bank's counter. When Lloyd was taken into custody his shoes and clothes were secured as evidence.

The grand jury for the Southern District of Ohio returned a two-count indictment against Lloyd. Count one charged him with armed bank robbery, and count two alleged that he carried or used a firearm during and in relation to a crime of violence (bank robbery) and that he possessed the firearm in furtherance of the bank robbery. A jury convicted Lloyd on both counts. The district court sentenced Lloyd to a forty-six-month term of imprisonment on the first count and a consecutive, eighty-four-month term of imprisonment on the second count, to be followed by five years of supervised release. Lloyd filed a timely appeal.

## II. ANALYSIS

### A.        Count Two of the Indictment

#### 1.       *Sufficiency*

Lloyd argues on appeal that the second count of the indictment failed to charge a crime. The sufficiency of an indictment is reviewed de novo. *United States v. Gatewood*, 173 F.3d 983, 986 (6th Cir. 1999). However, Lloyd did not challenge the sufficiency of count two of the indictment until this appeal. Where an indictment goes unchallenged until appeal, it must be liberally construed in favor of its sufficiency. *Id.* Under such circumstances, a conviction must not be reversed unless the indictment cannot be reasonably construed to charge a crime. *Id.*

The second count of the indictment charges Lloyd with violating 18 U.S.C. § 924(c)(1)(A). This subsection creates two distinct criminal offenses. *United States v. Combs*, 369 F.3d 925, 933 (6th Cir. 2004). The first is using or carrying a firearm "during and in relation to any crime of violence or drug trafficking crime." The second distinct offense is possessing a firearm "in furtherance of any such crime." The "in furtherance of" standard of participation related to the possession crime is a higher standard than the "during and in relation to" standard of participation related to the use or carrying crime. *Id.* at 932 (citing H.R. Rep. No. 105-344, at 11 (1997)). Therefore, this circuit has held that where an indictment applies the wrong standard of participation

and charges a person with "possess[ing] a firearm during and in relation to" a drug trafficking crime, the indictment fails to charge any codified federal crime.[1]  *Combs*, 369 F.3d at 934.

Lloyd contends that the second count of the indictment failed to charge a crime because it suffered from the same defect present in the *Combs* indictment.  The government argues that, unlike in *Combs*, the indictment in this case did not charge Lloyd with possession of a firearm during and in relation to a crime of violence.  The government points out that the second count of the indictment charged Lloyd with both using or carrying a firearm during and in relation to an armed robbery and with possession of a firearm in furtherance of an armed robbery.  The language of the indictment demonstrates that the government's position is correct.  The second count of the indictment charged that "during and in relation to" an armed robbery Lloyd "did knowingly use and carry, and in furtherance of such armed bank robbery did knowingly possess a firearm, that is, a semi-automatic handgun, and in the course of committing said armed bank robbery offense."  (JA 9-10.)  This language does not fail to charge any crime, but in fact charges two separate crimes.

> ## 2.          *Duplicity*

Lloyd argues in the alternative that his conviction on count two of the indictment must be overturned because it is impermissibly duplicitous.  As discussed above, count two does charge two separate crimes.  However, although "a duplicitous charge calls into questions the unanimity of a verdict of guilty . . . such a charge is not prejudicial *per se*, because proper jury instructions can mitigate the risk of jury confusion and alleviate the doubt that would otherwise exist as to whether all members of the jury had found the defendant guilty of the same offense." *United States v. Savoires*, 430 F.3d 376, 380 (6th Cir. 2005).  Moreover, Lloyd did not seek to dismiss the duplicitous count of the indictment before trial or challenge the jury instructions.  Consequently, this court may overturn the conviction on count two only if there was plain error which affected Lloyd's substantial rights.  Fed. R. Crim. P. 52(b); *United States v. Olano*, 507 U.S. 725, 731-36 (1993).

Lloyd's argument primarily relies upon a recent case which found plain error in a similar situation.  *Savoires*, 430 F.3d at 376.  The *Savoires* case, like this case, addressed a count in an indictment which was plainly duplicitous because it charged both the use and possession offenses outlined in 18 U.S.C. 924(c)(1)(A).[2]  However, the *Savoires* court pointed out that "proper jury instructions can mitigate the risk of jury confusion and alleviate the doubt that would otherwise exist as to whether all members of the jury had found the defendant guilty of the same offense."  430 F.3d at 380.  The jury instructions in *Savoires* required the jury to find that "during and in relation to the commission of that crime, the defendant knowingly used or carried or possessed a firearm." *Id.* at 379.  The court held that this did not obviate the confusion created by the indictment.  Instead the instructions compounded the problem by authorizing a conviction if the jury found that the defendant had only possessed a firearm during and in relation to the commission of a crime of violence.  As the *Combs* court pointed out, such actions would not constitute any codified federal crime. 369 F.3d at 934.  The *Savoires* court concluded that the duplicitous charge in the indictment combined with the problematic jury instructions affected the defendant's substantial rights. 430 F.3d at 381.

---

[1] The opposite mistake of charging use or carriage of a firearm in furtherance of a violent or drug trafficking crime would not create this problem because a fact-finder's determination that the higher "in furtherance of" standard of participation was met, would mean the lower "during and in relation to" standard would necessarily be met as well. *See United States v. Williams*, 138 F. App'x 743, 747 (6th Cir. 2005) (unpublished).

[2] The criminal trials in both *Savoires* and this case were conducted before this court ruled in *Combs* that § 924(c)(1)(A) creates two distinct criminal offenses.

The government argues that this case is distinguishable from *Savoires* for a number of reasons. Foremost among these is the fact that the jury instructions in this case were materially different than those given in *Savoires*. In this case the district court explained to the jury that it is an offense to *either* (1) use or carry a firearm during and in relation to a crime of violence *or* (2) possess a firearm in furtherance of a crime of violence. (JA 357.) Moreover, in setting forth the third element necessary to a guilty verdict on count two, the district court instructed that the jury must find "that during and in relation to the commission of that crime, the Defendant, Lawrence W. Lloyd, knowingly used or carried a firearm *or*, in furtherance of the crime, possessed a firearm." (JA 367, emphasis added). Consequently, these instructions did not suffer from the same defect as those in the *Savoires* case of authorizing a conviction based on actions which do not constitute a federal crime.

Although the district court explained the separate use and possession offenses properly to the jury, that does not dispense with the concern that different members of the jury might have convicted based on different offenses without a unanimous verdict on either offense. The district court did not explicitly direct the jury that unanimity on either the use or possession offense was necessary to a guilty verdict. However, the verdict form provided to the jury made no mention at all of the possession offense. Instead, the verdict form which was signed by each juror stated that the jury found Lloyd guilty of "carrying or using, and brandishing, a firearm during the commission of a crime of violence." (JA 32.)

Even if the jury instructions and verdict form were not sufficient to cure the error in the indictment, Lloyd would still not be able to demonstrate that his substantial rights were affected. Lloyd's right to a unanimous jury verdict is certainly substantial. However, given the factual context of this case, there is no indication that the duplicitous indictment affected that right. In other words, Lloyd has not demonstrated prejudice. *See Olano*, 507 U.S. at 734 (observing that in order for plain error to affect substantial rights the error must have been prejudicial, i.e. affected the outcome of the trial). The uncontroverted evidence at trial established that the bank robber pointed a gun at the teller and stuck the gun in her ribs in order to get her to comply with his demands. Lloyd does not challenge these facts, but argues that he was not the person who committed the robbery. The jury determined that Lloyd was the robber, and Lloyd cannot challenge the unanimity of that decision. The uncontroverted facts about the role of the firearm in the robbery are more than sufficient to support both a use offense and a possession offense. Consequently, Lloyd has failed to established that the language of the indictment had any effect at all on his right to a unanimous jury verdict.

Count two of the indictment was duplicitous, but the jury instructions clarified the two separate offenses and the verdict form reflects that all members of the jury convicted Lloyd of the use offense. Moreover, the alleged error did not affect Lloyd's substantial rights. There is no basis to overturn the conviction on the second count of the indictment.

## B.     Evidentiary Rulings

Lloyd challenges two of the district court's evidentiary rulings. He argues that the district court should not have permitted the prosecution to play a tape of the 911 calls from the bank and that it should not have allowed evidence regarding a comparison of the shoe impression from the teller's counter with an impression from the shoe that Lloyd was wearing when he was arrested shortly after the robbery occurred. Lloyd contends that the 911 calls and shoe impression evidence should have been excluded pursuant to Federal Rule of Evidence 403.

Rule 403 states, in relevant part, that "[a]lthough relevant, evidence may be excluded if the probative value is substantially outweighed by the danger of unfair prejudice." This court reviews evidentiary rulings by the district court for abuse of discretion. *United States v. Henley*, 360 F.3d

509, 518 (6th Cir. 2004); *United States v. Schreane*, 331 F.3d 548, 564 (6th Cir. 2003). Moreover, when reviewing the balancing determinations required by Rule 403, this court must maximize the probative value of the challenged evidence and minimize its potential for unfair prejudice. *United States v. Sanders*, 95 F.3d 449, 453 (6th Cir. 1996). "[T]he district court enjoys broad discretion in balancing probative value against potential prejudicial impact." *United States v. Layne*, 192 F.3d 556, 574 (6th Cir. 1999) (citing *United States v. Feinman*, 930 F.2d 495, 499 (6th Cir.1991)). Even when the district court abuses its considerable discretion, that error is harmless "unless it is more probable than not that the error materially affected the verdict." *United States v. Martin*, 897 F.2d 1368, 1372 (6th Cir. 1990).

The first evidentiary ruling Lloyd questions is the district court's decision to allow the 911 tape to be played for the jury. The tape contained the conversations between bank employees and the 911 operator during and immediately after the armed robbery. The employees reported what had occurred, described the appearance of the suspect, and reported what direction he was heading when he left the bank. The employees whose voices are on the 911 tape testified to the content of their conversations with the 911 operator before the tape was admitted into evidence and played for the jury. Lloyd argues that the 911 tape had little or no probative value because it did not introduce any new information that the bank employees did not include in their testimony. Lloyd goes on to argue that the emotional and distraught quality of the bank employees' voices evident on the 911 tape presented a danger of unfair prejudice which substantially outweighed the minimal probative value of the cumulative information provided by the 911 tape.

The 911 tape contained relevant and probative evidence. The bank employees described the fact that the bank was being robbed by a man with a gun, described the suspect, and described through which door the suspect left and in which direction he was headed. This information was also presented through the testimony of the bank employees themselves. The advisory committee notes to Rule 403 state that when considering the probative value of evidence, "the availability of other means of proof may . . . be an appropriate factor." *See also Old Chief v. United States*, 519 U.S. 172, 184 (1997). Therefore, the probative value of the 911 tape is lessened by the bank employees' testimony to the same information. But the only danger of unfair prejudice Lloyd can point to is that the tape "revealed the highly emotional state" of the bank employees at the time of the robbery. There is nothing about the *content* of the information on the tape that Lloyd claims created a danger of unfair prejudice. Instead, Lloyd essentially argues that the emotions evidenced in the employees' voices on the tape would tend to incense and inflame the jury so much that the jury would convict the defendant regardless of the evidence out of a blind desire to punish someone for the horrors suffered by the bank employees. This seems quite unlikely. Any danger of unfair prejudice was minimal, so the fact that the probative value of the 911 tape was diminished by other available testimony is not sufficient to hold that the district court's ruling was an abuse of discretion.

The second evidentiary issue Lloyd challenges on Rule 403 grounds is the district court's admission of expert testimony regarding the comparison of his shoe with the shoe impression left on the teller's counter by the suspect during the robbery. At trial the government produced an expert in footwear impression analysis who had examined a shoeprint taken from the teller's counter at the scene of the crime and the shoes Lloyd was wearing when he was arrested shortly after the robbery occurred. The state's expert, Suzanne Noffsinger, testified that the imperfections of the shoeprint taken from the crime scene and the relatively new and unworn condition of Lloyd's shoes prevented her from being able to positively identify Lloyd's shoe as the source of the shoeprint. However, Noffsinger was able to compare both the tread design and the physical size of the shoeprints and found that Lloyd's right shoe had the same tread design and was the same length from heel to toe as the shoe which left the print on the teller's counter in the bank. Noffsinger further testified that while Lloyd's shoe had a few (presumably unique) cuts and wear marks, the corresponding portions of the print from the bank were obscured. Therefore, she was not able to determine whether the shoe which left the print did or did not have the same cuts and wear marks.

Lloyd claims that the probative value of the shoeprint evidence was "almost nil." He supports this argument by stating that the expert's testimony "established no more than that the impression at the bank was made by a right shoe, and [Lloyd] wore a right shoe." If this was an accurate characterization of the testimony, Lloyd would be correct that such testimony would have little, if any, probative value. However, Lloyd's characterization misrepresents the record. The actual evidence about the shoeprint has considerable probative value. Although there are undoubtedly a fairly large number of right shoes in the world with the same tread design and dimensions as the print left in the bank, the number of such shoes present in the vicinity of the crime scene shortly after the robbery was obviously much smaller. Consequently, the fact that Lloyd was arrested a short distance from the bank, shortly after the robbery, while wearing shoes with the same tread design and dimensions of a shoe print left by the suspect is highly probative. Nor does Lloyd establish any danger of unfair prejudice posed by the shoeprint evidence. Lloyd simply states that the "potential for prejudice was very high." While this is true, only *unfair* prejudice factors into the Rule 403 analysis. There is no indication of any danger of unfair prejudice posed by the shoeprint evidence. The district court did not abuse its discretion when it refused to exclude that evidence.

Even if Lloyd could establish that either or both of the evidentiary rulings were an abuse of discretion, such error would be harmless in light of the remaining evidence of Lloyd's guilt. Shortly after the robbery, Lloyd was spotted sitting alone at a bus stop near the bank. Police officers identified him as a suspect based on the descriptions of the perpetrator obtained from witnesses. In the course of arresting Lloyd, the police discovered a gun in his waistband which was identified by witnesses as being the same type used in the robbery. Moreover, the police discovered a shopping bag lying next to Lloyd's feet containing a blue pillowcase filled with nearly $35,000 in strapped cash. The bank employees identified the blue pillowcase as the one used by the perpetrator to carry the stolen cash out of the bank and the strapping on the cash contained the initials and other markings of the bank teller who strapped the cash which was relinquished to the perpetrator of the robbery. In light of this evidence, we cannot conclude that the admission of the 911 tape or shoeprint evidence more probably than not materially affected the verdict.

## C.     Motion to Inquire of a Juror

Several weeks after the jury convicted Lloyd, the district judge received a letter from John K. Limoli, an attorney in Cincinnati, reporting that Limoli had spoken with one of the jurors from Lloyd's trial. The letter described the conversation as follows:

> The reason I am writing is that Mr. Gonzalez also told me that he did not vote his mind as a juror. He said he did not believe, beyond a reasonable doubt, that the defendant was guilty but finally voted for guilt because he could no longer stand the pressure from the other jurors. Mr. Gonzalez further stated that there was one other holdout juror who felt as he did but who also buckled under the pressure of another, rather belligerent juror, who had resorted to name calling.

(JA 37.) The district court distributed this letter to the prosecutor and defense counsel. Lloyd filed a motion requesting permission to inquire of Juror Gonzales regarding whether he was subjected to any extraneous influence during the jury deliberations. The district court denied the motion on the basis that the information in the letter did not contain any indication of extraneous information or influence. Lloyd asserts that the denial of his motion was an abuse of discretion.

"When possible juror misconduct is brought to the trial judge's attention he has a duty to investigate and to determine whether there may have been a violation of the sixth amendment." *United States v. Shackelford*, 777 F.2d 1141, 1145 (6th Cir. 1985). The trial judge's decision regarding the measures necessary to make this determination is reviewed for abuse of discretion. *E.g., id.*; *United States v. Rigsby*, 45 F.3d 120, 125 (6th Cir. 1995); *United States v. Griffith*, 17 F.3d

865, 880 (6th Cir. 1994). "A trial court's refusal to permit an evidentiary hearing may constitute abuse of discretion when the alleged jury misconduct involves extrinsic influences." *Shackelford*, 777, F.2d at 1145; *see also Rigsby*, 45 F.3d at 124-25. However, refusal to hold an evidentiary hearing is not an abuse of discretion where there is no credible allegation of extraneous influence or information. *See Rigsby*, 45 F.3d at 125; *Griffith*, 17 F.3d at 881; *Shackelford*, 777 F.2d at 1145. This principle flows from the common law rule that a juror is not competent to question his own verdict and its concomitant exception that the only aspect of deliberations a juror may testify about is whether deliberations were influenced by extraneous influence or information. This common law rule and its exception are codified in Federal Rule of Evidence 606(b) which states:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.

Lloyd acknowledges the limitations Rule 606(b) places on the scope of any post-verdict inquiry of jurors. Consequently, Lloyd confines his argument to the exception and argues that since there was evidence that Juror Gonzales did not "vote his mind," the trial court should have permitted inquiry into whether this was the result of any extraneous influence or pressure. This argument ignores the fact that Limoli's letter clearly states that the pressure under which Gonzales (and allegedly one other juror) buckled was "pressure from the other jurors." This statement negates any conjecture that it was *external* coercion which prevented Gonzales from voting his mind. Since there was no credible evidence of extraneous information or influence, Lloyd's argument fails. The district court's denial of his motion to question Gonzales was not an abuse of discretion.

### III.  CONCLUSION

For the foregoing reasons, we AFFIRM the district court in all respects and uphold Lloyd's conviction.

---

**CONCURRING IN PART, DISSENTING IN PART**

---

BOYCE F. MARTIN, JR., Circuit Judge, concurring in part and dissenting in part. While I would agree with the majority's decision to affirm the district court's evidentiary rulings and its denial of Lloyd's motion to question a juror, Maj. Opn. at 4-7, I must respectfully dissent from its affirmance of Count Two of Lloyd's indictment.

Title 18, section 924(c) of the United States Code states that it is a federal crime when

> any person who, *during and in relation* to any crime of violence . . . for which the person may be prosecuted in a court of the United States, *uses or carries* a firearm, **or** who, *in furtherance of* any such crime, *possesses* a firearm, shall, in addition to the punishment for such crime of violence or drug trafficking crime [receive an additional penalty].

18 U.S.C. § 924(c) (emphasis added). We have held that this language creates two separate and distinct crimes: first, the "during and in relation to" language creates the "use" offense and second, the "in furtherance of" language creates a separate "possession" offense. *United States v. Combs*, 369 F.3d 925, 930-33 (6th Cir. 2004).

In *United States v. Savoires*, 430 F.3d 376 (6th Cir. 2005), we held that the inclusion of language from both crimes in a single indictment charge was "clearly duplicitous - i.e., it 'set[] forth separate and distinct crimes' in a single count" in light of the holding in *Combs*. *Id.* at 379-380 (quoting *United States v. Davis*, 306 F.3d 398, 415 (6th Cir. 2002)). The language of the indictment in *Savoires* was "the carriage and possession of a firearm 'during and in relation to *and* in furtherance of a drug trafficking crime.'" *Id.* at 378 (quoting Savories's indictment) (emphasis added). The language in our case is remarkably similar.

> Count 2
> On or about November 6, 2003, in the Southern District of Ohio, Lawrence W. Lloyd, *during and in relation* to a crime of violence for which he may be prosecuted in a court of the United States . . . did knowingly *use and carry*, *and in furtherance* of such armed bank robbery did knowingly *possess* a firearm . . . in the course of committing said armed bank robbery offense.

(Emphasis added). This language, like in *Savoires*, combines the language of both the "use" offense and the "possession" offense with the conjunctive "and." This is in stark contrast to the disjunctive "or" which separates the two offenses into distinct and different crimes in section 924(c). *See Combs*, 369 F.3d at 931. The result is a duplicitous charging instrument, which calls into question the unanimity of a jury's guilty verdict. *Davis*, 306 F.3d at 415.

This analysis is not where I differ with the majority. In fact, the majority itself qualifies Lloyd's indictment as "plainly duplicitous." Maj. Opn. at 3. However, the majority relies on the jury instructions and the verdict form to distinguish this case from *Savoires* and allow the "plainly duplicitous" indictment to stand. I must respectfully disagree.

The majority opinion, in its discussion of the jury instructions, states that the district court explained to the jury that it could convict on either using or carrying a firearm or on a possession charge. Maj. Opn. at 4. Additionally the district court, in its explanation of the elements of Count Two, again repeated (correctly) that the jury could find a "use" offense or a "possession" offense.

If this was all the district court had said on the topic, then I would be inclined to agree with the majority that these jury instructions are distinguishable from those in *Savoires*. However, the district court, in introducing the second count to the jury, stated that

> Count 2 of the indictment charges that during and in relation to the armed bank robbery as described in Count 1, the Defendant, Lawrence W. Lloyd, did knowingly *use and carry*, in furtherance of such armed bank robbery, *and* did knowingly *possess* a firearm and in the course of committing said bank – armed bank robbery did knowingly and intentionally brandish said firearm.

(Emphasis added). Therefore, the district court spoke to the "use" offense versus "possession" offense three times, instructing the jury incorrectly once, and then correctly the next two times (without noting its error in the first instance). Therefore, as in *Savoires*, the jury instructions did not act as a clarification for the jury, but further muddied the waters and further confused the jurors. That it is like adding a small dose of color to perfectly white paint – no matter how much additional white paint you add, it will never go back to its original pristine state. Unless the court acknowledged its earlier mistake, identified it as a mistake to the jury, and then corrected the mistake, the mere repetition of the proper rule does not make up for the earlier errors.

The government and the majority opinion also rely on the jury verdict form to correct the duplicitous indictment and the inconsistent jury instructions. I do not believe the verdict form is enough to offset the previous damage done. A confused juror could too easily have read the indictment and followed the district court's first instruction on the issue, thus combining the "use" offense and "possession" offenses in his mind and defining that as Count Two. That juror would then have no need to read the elements presented on the jury verdict form since he already "knows" what Count Two is. This, in my opinion, is adding more white paint to an already tainted jury.

Finally, the majority opinion states that even if the jury instructions and verdict form were insufficient to correct the error, Lloyd would still not be entitled to relief. With this result, the majority holds that an indictment that is "plainly duplicitous," and that was left uncorrected by the jury instructions and the verdict form, does not constitute plain error. We have held that such an uncorrected duplicitous indictment does constitute plain error in previous cases. *See Savoires*, 430 F.3d at 381. The majority believes the facts of this case and the nature of Lloyd's defense constitute reasons why such an error did not affect Lloyd's rights. However, neither the facts of a particular case nor the nature of a particular defense change Lloyd's basic right to a fair trial. This case thus presents an identical situation to that of *Savoires*.

> The duplicity of the indictment and the related defects in the charge to the jury are plain in the light of our *Combs* decision. At the very least, these errors affected Savoires' substantial rights by authorizing a conviction for a non-existent offense. The possibility of such an outcome undermined the fairness of Savoires' trial. We are satisfied, therefore, that plain error has been established . . . and that the § 924(c) conviction must be reversed.

*Id.* As it was in that case, so it is in this case.

Therefore, I would reverse Lloyd's conviction as to Count Two and affirm the Count One conviction.