NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0007n.06

No. 24–1801

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Jan 06, 2026
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff–Appellant, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| v. | ) ) | COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| CORTEZ LORENZO HILL, | ) ) | |
| Defendant–Appellee. | ) ) | OPINION |
| | ) | |

Before: BOGGS, BUSH, and READLER, Circuit Judges.

**JOHN K. BUSH, Circuit Judge**. A jury found Cortez Lorenzo Hill guilty of possession with intent to distribute a controlled substance (heroin) and conspiring to do the same. On appeal, Hill alleges a variance from the indictment, specifically that the government failed to show that a single conspiracy existed as alleged, and he contends that the evidence was insufficient to show that he possessed the heroin with intent to distribute. Hill also argues that the district court violated his Sixth Amendment right to a fair trial when it denied his motion for mistrial based on a statement that a subsequently dismissed juror had made to the remaining impaneled jurors. We disagree and **AFFIRM**.

**I.**

This appeal involves a challenge to the sufficiency of the evidence, so we review the evidence in the light most favorable to the government and resolve all reasonable inferences in its favor. *United States v. Campbell*, 549 F.3d 364, 374 (6th Cir. 2008); *United States v. Sheppard*, 149 F.3d 458, 461 (6th Cir. 1998).

From 2013 to 2016, Hill worked with various individuals to import and sell drugs in the Detroit, Michigan area. Hill came to the attention of law enforcement in January 2014, after DEA agents and task-force officers began investigating a drug-trafficking organization that imported large quantities of marijuana, heroin, and cocaine to midwestern states. During their investigation, officers identified and surveilled Hill and two houses he owned: one located at 6145 Helen Street in Detroit, Michigan, and another at 20101 Salisbury Street in St. Clair Shores, Michigan.

Specifically, in March 2014, investigators watched Hill and another man arrive at an Amtrak station in Detroit, pick up two other drug dealers named Gilberto Adrian Izaguirre and Nathaniel Terrell, and return to Hill's Salisbury Street address. Officers also witnessed "a lot of activity" at the Salisbury Street house, with "a lot of cars coming and going." R. 210, Trial Transcript, PageID 2721. Notably, Hill was seen in the presence of, and interacting with, various drug dealers.

Hill also sent messages at various times to arrange rental-car pickups for drug dealers he worked with. In one instance, Hill arranged a pickup and later texted, "Touch Down, when ever u ready." R. 211, Trial Transcript, PageID 2753–54. He also messaged "[p]arty today male and female dancers," which officers understood were code words for heroin (male) and cocaine (female). *Id.* at 2753; R. 209, Trial Transcript, PageID 2433. And Hill messaged that he "got some new CD's," a code word for the quantity. R. 211, Trial Transcript, PageID 2754; R. 209, Trial Transcript, PageID 2433–34.

Following months of surveillance, officers executed a search warrant at Hill's two houses on May 23, 2014. During the searches, Hill was not physically present at either address. Later, officers stopped Hill while driving, and they recovered a firearm, $5,000 in cash, and his cellphone.

2

In the Helen Street home, officers found 2.75 kilograms of heroin and lesser amounts of cocaine and methamphetamine. Also located were Hill's personal items, including documents and items related to Hill's company, Lo–End Records, with the Helen Street address listed. In the kitchen, officers found no food but did discover drug–packaging materials, including plastic gloves, goggles, respirators, and scales. The kitchen served "as a processing area for drugs" or what they "call a drug lab." R. 159, Trial Transcript, PageID 881. Elsewhere in the house, one bedroom had a hole in the ceiling, and that room, as well as the first-floor living room, had only mattresses (without linens) for furnishings.

In the Salisbury Street home, officers found Izaguirre and another man, Eric Zuniga Martinez. Also at that residence were fourteen cell phones, seven guns, scales, and documents such as a drug ledger, a deposit slip, and wire money-transfer receipts. Finally, officers found W–2 statements and a Verizon cell-phone bill, all with Hill's name and the Helen Street address. The upstairs room of the Salisbury Street house appeared to be "a computer room" because it lacked furniture. R. 207, Trial Transcript, PageID 2148. In that room, officers found a Michigan application for title and registration of a 2002 Dodge pickup truck listing Hill as the applicant and his Helen Street address. Officers also located various tax forms for Hill, some listing the Salisbury Street address and others, the Helen Street address. They also seized a form permitting Hill's registered business, Lo–End Records, to operate within Detroit. That form listed the Helen Street address as the business address.

A grand jury indicted Hill for possessing and conspiring to possess controlled substances with intent to distribute. Hill was also indicted for other counts, which are not at issue in this appeal.

At trial, Lorenzo Gaytan, a nephew of Izaguirre, testified that from 2013 to 2014, Izaguirre and Martinez provided Hill approximately a kilogram of heroin every two weeks. In 2015, Gaytan supervised the heroin shipments from Izaguirre to Hill. Gaytan also testified that Hill used the Helen Street address to traffic in drugs, storing them in the basement. Gaytan noted that he, Izaguirre, and Martinez visited Detroit often; they would stay with Hill and oversee the drug sales. Although Hill claimed at trial that the Helen Street house was a rental property, Gaytan testified that he visited the house at least 15 times and he never saw a renter. Utility records also reflected that in 2014 the gas was not turned on during the winter months.

After the government rested its case–in–chief, three jurors reported to the district court that another juror, Juror 9, had made a concerning statement in the jury room. According to these jurors, Juror 9 had disclosed that her ex–boyfriend had overdosed on heroin, and that he had either lived, or frequented a house, on Helen Street. The district court questioned Juror 9, and she confirmed that she had revealed this information to the other jurors. With both parties' consent, the district court dismissed Juror 9.

Immediately following, the court conducted a *Remmer*[1] hearing and questioned each juror individually about the potential impact of the statement and his or her ability to remain impartial. Both the government and Hill's defense counsel had the opportunity to question the impaneled jurors. Although many jurors expressed their "shock," "surprise," and "concern" over Juror 9's statement, all clearly responded that it would not impact their ability to be fair and impartial in Hill's trial. They also affirmed their understanding that Juror 9's statement was not to be considered evidence in the trial.

---

[1] *Remmer v. United States*, 347 U.S. 227 (1954).

Hill then moved for a mistrial, arguing that Juror 9's statement was "a bell that can't be unrung." R. 177, Jury Trial, PageID 1484. However, when the district court questioned whether Hill had "anything specific" that demonstrated prejudice or impartiality, Hill responded in the negative and acknowledged that the district court "questioned [the jurors] at length, as we did as well." *Id*. After taking the matter under advisement, the court denied the motion. It noted that it had conducted a thorough *Remmer* hearing, counsel for both the government and the defense had the opportunity to ask questions, and the jurors had all credibly responded that they could remain impartial.

Hill also moved for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, which the district court denied.

The jury found Hill guilty of conspiracy to possess heroin with intent to distribute in violation of 21 U.S.C. §§ 846 and 841(a) and possession of heroin with intent to distribute in violation of § 841(a), and Hill timely appealed.

**II.**

Hill first alleges a variance from the indictment, asserting that the government lacked enough proof to show a single conspiracy as required by 21 U.S.C. § 846 because the individuals allegedly involved in the conspiracy did not all "directly interact[]" one with one another. Appellant Br. at 29. He also asserts that the evidence is insufficient to sustain a conviction under this statute because it did not demonstrate the individuals were involved in the furtherance of a common goal. We are not persuaded.

We review the question of whether a variance has occurred de novo. *United States v. Caver*, 470 F.3d 220, 235 (6th Cir. 2006). In conspiracy cases, "a variance may arise where the indictment charges a single conspiracy and the evidence at trial instead demonstrates multiple,

separate conspiracies." *United States v. Guerrero*, 76 F.4th 519, 524 (6th Cir. 2023). For us to reverse his conviction, Hill must "(1) demonstrate the variance, and (2) show that the variance affected a substantial right." *United States v. Warman*, 578 F.3d 320, 341 (6th Cir. 2009).[2] Hill has failed on both prongs.

"The principal considerations to determine the number of conspiracies are the existence of a common goal, the nature of the scheme, and the overlapping of the participants in various dealings." *Warman*, 578 F.3d at 341–42 (quoting *United States v. Smith*, 320 F.3d 647, 652 (6th Cir. 2003)). Whether the government has presented evidence of a single or multiple conspiracies is a question of fact for the jury, and we consider this question on appeal in the light most favorable to the government. *Guerrero*, 76 F.4th at 524.

The evidence at trial was enough for a reasonable jury to conclude that Hill played an integral part in a large-scale drug-trafficking organization, with all individuals having a common goal: to sell drugs for profit in midwestern states. *See United States v. Warner*, 690 F.2d 545, 549–50 (6th Cir. 1982) ("[T]he essence of the crime of conspiracy is agreement."). There was proof that members of the conspiracy imported the contraband, delivered it to Hill in Detroit, and that Hill arranged rental vehicles to transport the contraband. Hill also housed coconspirators and suppliers at his houses, and messaged individuals that the drugs had arrived. Gaytan testified that Hill stored the contraband in the basement at the Helen Street address. And during the officers'

---

[2] The government contends that Hill waived his variance argument because he did not specify these grounds in his motion for judgment of acquittal. If Hill did not raise the issue of variance before the district court, we review his claim for plain error. *Caver*, 470 F.3d at 235. If he did raise the issue before district court, we would reverse the conviction if the variance occurred and that variance affected his substantial rights. *Id.* We, however, need not decide if this argument is preserved because—in any circumstance—Hill has failed to allege that the variance affected his substantial rights. Accordingly, we decline to decide if Hill properly preserved his argument and instead address the merits.

search of both houses, they found drug distribution materials, including scales, gloves, goggles, and a drug ledger.

That evidence, considered in the light most favorable to the government, was sufficient to demonstrate the existence of the conspiracy's common goal. Hill does not cite any legal authority for his argument that all members of a conspiracy must "directly" interact with one another. To the contrary, this court has recognized the prevalence of "'chain' conspiracies." *Warner*, 690 F.2d at 549. In chain conspiracies, "the agreement can be inferred from the interdependent nature of the criminal enterprise." *Id.* And "[c]onspiracies to distribute narcotics, which normally involve numerous sales and resales of drugs until they reach the ultimate consumers, are often 'chain' conspiracies." *Id.* (citation omitted). Here, there was enough proof for the jury to reasonably infer that the conspiracy's agreement was singular in nature given the nature of the criminal enterprise.

Even assuming the government provided insufficient evidence of a single conspiracy, Hill has failed to demonstrate prejudice. *Caver*, 470 F.3d at 236. Hill merely alleges that "it is impossible to say that the variance did not affect the outcome." Appellant Br. at 30. But Hill cannot demonstrate prejudice by asserting that the jury "might" have come out the other way. *Id.* Instead, Hill must allege that the "error of trying multiple conspiracies under a single indictment substantially influenced the outcome of the trial. *Caver*, 470 F.3d at 237 (citing *Kotteakos v. United States*, 328 U.S. 750, 765 (1956)). He has failed to do so. Thus, even if a variance did exist, it did not amount to reversible error.

## III.

Hill also contends that the government did not produce sufficient evidence to support his conviction for heroin possession with intent to distribute under 21 U.S.C. § 841(a). Again, he fails to persuade.

7

We review de novo challenges to the sufficiency of the evidence. *United States v. Carson*, 560 F.3d 566, 579 (6th Cir. 2009). As noted, we view the evidence in the light most favorable to the government and draw all reasonable inferences in the government's favor, asking whether "*any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.*" *United States v. Coffee*, 434 F.3d 887, 895 (6th Cir. 2006) (quoting *United States v. Lloyd*, 10 F.3d 1197, 1210 (6th Cir. 1993)). Circumstantial evidence alone is sufficient to sustain a jury's verdict. *United States v. Reed*, 141 F.3d 644, 651 (6th Cir. 1998). Hill "bears a heavy burden" in challenging the sufficiency of the evidence. *Carson*, 560 F.3d at 580.

To convict under 21 U.S.C. § 841(a), the government must prove that a defendant (1) knowingly (2) possessed a controlled substance (3) with intent to distribute. *Coffee*, 434 F.3d at 897. "[P]ossession of contraband can be shown through either actual or constructive possession." *United States v. Latimer*, 16 F.4th 222, 225 (6th Cir. 2021). An individual who is in actual possession of contraband "knowingly has direct physical control over [the contraband] at a given time." *United States v. Bailey*, 553 F.3d 940, 944 (6th Cir. 2009). By contrast, constructive possession of contraband requires either "(1) dominion or control over the item itself, or (2) dominion over the premises where the item is located." *Latimer*, 16 F.4th at 225 (cleaned up). The government may prove constructive possession by circumstantial evidence alone. *United States v. Raymore*, 965 F.3d 475, 484 (6th Cir. 2020).

Here, it is not necessary to address actual possession because the government presented ample evidence for a reasonable jury to find constructive possession. The parties do not dispute that Hill owns the Helen Street house. Hill, though, argues that he did not have constructive possession of the heroin there. He asserts that the house was a rental property and, therefore, the evidence was insufficient to show that he constructively possessed the contraband found there.

8

We disagree. Viewing the evidence in the light most favorable to the prosecution, *Coffee*, 434 F.3d at 895, a rational juror could conclude that Hill had dominion over the premises where the heroin was located.

Physical surveillance and other evidence indicate that Hill had "dominion over the premises where the [drugs were] located." *Latimer*, 16 F.4th at 225 (quoting *United States v. Wheaton*, 517 F.3d 350, 367 (6th Cir. 2008)). Officers witnessed and received testimony about Hill frequenting the Helen Street address. Hill contacted the local utility when he needed gas to be turned on for the house. And Hill physically stored items for his company, Lo–End Records, there. Also, various records, including W–2 statement forms, indicated that Hill's primary residence was the Helen Street address. *See United States v. Hill*, 142 F.3d 305, 312 (6th Cir. 1998) (affirming defendant's conviction for possession of cocaine and marijuana with intent to distribute where, among other factors, the premises contained documents "bearing defendant's name and address, indicating his use of the premises").

Further support for Hill's dominion over the Helen Street house came from Gaytan's testimony. Gaytan testified that he made at least 15 visits to the Helen Street house with Hill and that Hill stored in the basement narcotics that he trafficked. *See United States v. Sheppard*, 149 F.3d 458, 462 (6th Cir. 1998) (affirming defendant's conviction for possession of cocaine with intent to distribute, in part because the defendant "was seen several times at the house in which the drugs were found").

The jury was within its province to reject Hill's argument that, at the time of the drug seizure, the Helen Street house was a rental property. To the contrary, the evidence was sufficient to demonstrate that the Helen Street house was in an unlivable condition for a renter. Officers found a hole in the roof, only a few mattresses without linens, and no food. The kitchen area was

described as "a drug lab" because it was staged to process and distribute narcotics. R. 159, Jury Transcript, PageID 881. And Gaytan never saw a renter when he visited the house. Although Hill, both at trial and here on appeal, argues that the house was a rental property, the evidence was more than sufficient for a jury to reject that argument. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions . . . .").[3]

Hill also contends that the government's evidence was insufficient to demonstrate constructive possession because Hill was not physically at the Helen Street house at any point "on the date of the search." Appellant Br. at 33. Hill further notes that he made no attempt to destroy or hide the heroin at the Helen Street address.[4] But those points were for the jury, not this court, to weigh. And nothing in our case law suggests that in order to *constructively* possess narcotics, one must either be physically near the narcotics on the day of their discovery or attempt to destroy or hide them at that time. The very essence of constructive possession is that—unlike actual possession—one does *not* have direct physical control over the narcotics. *See Bailey*, 553 F.3d at 944. Besides, Hill's argument flies in the face of our well-established law that circumstantial evidence, alone, can support a jury's verdict. *Id*. at 954.

---

[3] Typically, "[A] jury 'is entitled to infer that a person exercises constructive possession over items found in his home." *Hill*, 142 F.3d at 312 (quoting *United States v. Morris*, 977 F.2d 617, 620 (D.C. Cir. 1992)). But when various individuals occupy a home, we "require an additional statement or circumstance to connect the defendant to the contraband found on the premises." *Latimer*, 16 F.4th at 225. This additional "quantum of evidence," however, "is minimal." *Id.* at 226 (cleaned up). Even assuming that other individuals "occup[ied]" Hill's Helen Street house, as he alleges, the government's evidence connecting Hill to the contraband found on his premises passes the "minimal" bar.

[4] In making these arguments, Hill compares this case to various cases in the Ninth and Eleventh Circuits in which the evidence of constructive possession of contraband was held insufficient. Although we recognize the persuasive authority of case law from our sister circuits, *see Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 553 n.6 (6th Cir. 2007), we need not look to other circuit precedent "when binding precedent from our own Circuit answers the question," *United States v. Cavazos*, 950 F.3d 329, 336 (6th Cir. 2020). Thus, we decline to address those cases that Hill cites.

On appeal, we are prohibited from independently reweighing the evidence. *United States v. Garcia*, 758 F.3d 714, 718 (6th Cir. 2014). Instead, it is the sole province of the jury "to choose from among reasonable constructions of the evidence the drug possession theory they fe[el] [i]s based on the evidence." *Hill*, 142 F.3d at 312. Given the government's evidence presented at trial, a rational juror could have found that Hill constructively possessed the heroin found at the Helen Street house. Thus, Hill has failed to sustain his "heavy burden" when challenging the sufficiency of the evidence for his conviction. *Carson*, 560 F.3d at 580.

### III.

Hill also contends that the district court violated his Sixth Amendment right to a fair trial when it denied his motion for a mistrial and held that Juror 9's remarks did not taint the remaining impaneled jurors. We disagree.

The Sixth Amendment guarantees a criminal defendant the right to a trial by an impartial jury. *See* U.S. Const. amend. VI; *United States v. Soto*, 794 F.3d 635, 663 (6th Cir. 2015). A defendant is deprived of that right with "[t]he presence of even a single biased juror." *United States v. Lanier*, 988 F.3d 284, 294 (6th Cir. 2021). And yet "[t]he safeguards of juror impartiality . . . are not infallible; it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote." *United States v. Pennell*, 737 F.2d 521, 532 (6th Cir. 1984) (quoting *Smith v. Phillips*, 455 U.S. 209, 217 (1982)).

When advised of possible juror misconduct, district courts are required "to investigate and to determine whether there may have been a violation of the [S]ixth [A]mendment." *United States v. Lloyd*, 462 F.3d 510, 518 (6th Cir. 2006) (quoting *United States v. Shackelford*, 777 F.2d 1141, 1145 (6th Cir. 1985)). Indeed, district courts must "determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial, in a hearing with all interested parties

permitted to participate." *United States v. Zelinka*, 862 F.2d 92, 94–95 (6th Cir. 1988) (quoting *Remmer v. United States*, 347 U.S. 227, 229–30 (1954)). A *Remmer* hearing is the established remedy for allegations of juror partiality. *Smith*, 455 U.S. at 215.

As noted, the district court conducted a *Remmer* hearing before it denied Hill's motion for a new trial based on juror misconduct. We review this denial for abuse of discretion. *See Pennell*, 737 F.2d at 533.

On a motion for a new trial based on improper juror communication, the defendant bears the burden of proof "to demonstrate that unauthorized communications with jurors resulted in actual juror partiality. Prejudice is not to be presumed." *Id.*; *see also United States v. Branham*, 97 F.3d 835, 855 (6th Cir. 1996).[5] "The mere occurrence of juror misconduct, extraneous information, or improper contact is not, without evidence of actual prejudice, enough to warrant a new trial." *In re Sittenfeld*, 49 F.4th 1061, 1067 (6th Cir. 2022). Also, we accord substantial deference to a district court's determination about the credibility of jurors' assurances. *See United States v. Corrado*, 304 F.3d 593, 604–05 (6th Cir. 2002).

We conclude that the district court did not abuse its discretion in finding that the jurors could remain impartial despite Juror 9's comments about her former boyfriend's heroin addiction and overdose and his connection to the Helen Street address. Once other jurors made the district court aware of Juror 9's comments, the court, with both parties' agreement, dismissed Juror 9 and then immediately conducted the *Remmer* hearing. As noted, the court asked each juror individually about his or her ability to remain impartial. Counsel for both the government and

---

[5] Hill incorrectly relies on a Fourth Circuit case, *United States v. Lawson*, 677 F.3d 629 (4th Cir. 2012), to contend that if a juror is exposed to any extrinsic evidence, then a district court must presume prejudice (and the burden shifts to the government to rebut that presumption). But this circuit has held to the contrary, *Pennell*, 737 F.2d at 532, and *Lawson* itself acknowledges that our circuit "ha[s] departed from use of the presumption." 677 F.3d at 643.

defense were also given the opportunity to question the remaining impaneled jurors about the potential impact of Juror 9's statement and their deliberations.

Although various jurors expressed that they were concerned by Juror 9's statement, the district court acted within its discretion to not equate those concerns with the lack of impartiality. *See Lanham*, 617 F.3d at 882. In fact, an expression of shock should be no surprise, as the district court instructed all the jurors at various times *not* to discuss the case or consider extraneous facts during the trial. If anything, the remaining jurors' concerns reflected their understanding of the district court judge's repeated instructions and the importance of adhering to those instructions. Despite their understandable surprise, each remaining juror unequivocally answered that Juror 9's statement would not impact his or her ability to be fair and impartial in Hill's trial. Those jurors also indicated that they understood Juror 9's statement was not to be considered evidence in the trial. Thus, we reject Hill's assertion that the jurors' expressions of concern indicate that they had already determined Hill's guilt and, consequentially, were not impartial.

Hill fails to offer any evidence that calls in question the district court's decision not to disband the jury. Instead, he only postulates that the jurors "*could have been* influenced" by Juror 9's comments. Appellant Br. at 45 (emphasis added). Our review of the entirety of the jurors' comments convinces us that the district court acted within its discretion in finding that Juror 9's comments did not taint the remaining impaneled jurors, and that Hill did not sustain his burden to demonstrate otherwise. *See Branham*, 97 F.3d at 855. Given that we accord substantial deference to a district court's determination about the credibility of jurors' assurances, *Lanham*, 617 F.3d at 882, we cannot say that the district court abused its discretion in finding the jurors' unequivocal responses credible.

Because Hill failed to show actual juror partiality, *Pennell*, 737 F.2d at 532, we defer to the district court's determination that the remaining impaneled jurors could serve impartially. Accordingly, the district court did not violate Hill's Sixth Amendment right when it denied his motion for a mistrial.

## IV.

For these reasons, we **AFFIRM** the district court's judgment.