RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 17a0208p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

Nos. 16-6655/6657

RICKY ANTHONY LANIER (16-6655); KATRINA RESHINA LANIER (16-6657),

*Defendants-Appellants.*

_____

Appeal from the United States District Court
for the Eastern District of Tennessee at Greeneville.
No. 2:14-cr-00083-1—J. Ronnie Greer, District Judge.

Argued: July 28, 2017

Decided and Filed: September 7, 2017

Before: MOORE, STRANCH, and DONALD, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Donald Capparella, DODSON, PARKER, BEHM & CAPPARELLA, BPR, Nashville, Tennessee, for Appellants. David L. Gunn, UNITED STATES ATTORNEY'S OFFICE, Greeneville, Tennessee, for Appellee. **ON BRIEF:** Donald Capparella, Tyler Chance Yarbro, DODSON, PARKER, BEHM & CAPPARELLA, BPR, Nashville, Tennessee, for Appellants. David L. Gunn, UNITED STATES ATTORNEY'S OFFICE, Greeneville, Tennessee, for Appellee.

---

**OPINION**

---

KAREN NELSON MOORE, Circuit Judge. Defendants-Appellants Ricky Lanier and Katrina Lanier argue that their convictions should be overturned because the district court failed to interview, or allow their attorneys to interview, jurors after learning that one juror initiated extraneous communications with a state prosecutor. The defendants also raise several arguments related to their sentences. Because the district court failed to investigate the juror's extraneous communications, we **VACATE** the defendants' convictions and **REMAND** their cases for a *Remmer* hearing. Because we vacate the defendants' convictions, we do not address the sentencing issues at this time. We retain jurisdiction over this case pending the district court's *Remmer* hearing.

## I. BACKGROUND

Ricky Lanier and Katrina Lanier were involved in a scheme fraudulently to obtain government contracts reserved for businesses owned by socially and economically disadvantaged individuals or by service-disabled veterans. *See* R. 151 (Second Superseding Indictment at 1–10) (Page ID #1456–65). Defendants used two companies, JMR Investments, LLC and Kylee Construction, Inc., as fronts to obtain construction contracts under two government set-aside programs, the 8(a)-BD program for small businesses considered socially and economically disadvantaged under federal law and the service-disabled-veteran-owned small-business program. *Id.* at 4–9 (Page ID #1459–64). Although defendants obtained the construction contracts fraudulently, defendants satisfactorily delivered on the contracts, according to testimony from several government employees. For example, one government employee acknowledged that working with defendants was "kind of the dream operation for the federal government," and that he would recommend them for another job. R. 232 (Trial Tr. at 199–201) (Page ID #3926–28).

On December 17, 2015, during jury deliberations concerning defendants, one of the jurors contacted assistant district attorney Theresa Nelson—a social acquaintance and a state

prosecutor not involved with the federal case against defendants—to discuss the jury deliberations.  The district court learned about this conversation because Nelson called the court to report it.  During this phone call, Nelson told the district judge that a juror (Juror 11) called her and said that there was a "problem" with the jury deliberations.  R. 212 (Trial Tr. at 3) (Page ID #2511).  According to the district judge's account of his telephone conversation with Nelson, Nelson told Juror 11 that they could not discuss deliberations and that Juror 11 should not say any more.  *Id.*  Nelson instructed Juror 11 that if something was going on, the juror needed to alert the judge.  *Id.*  Juror 11 said that she did not know how to alert the judge.  *Id.*  Nelson told Juror 11 to tell the court officer, or the clerk, or "somebody," because the juror needed to communicate any problems to the judge.  *Id.* at 3–4 (Page ID #2511–12).  No juror alerted court personnel to problems with the deliberations.  *Id.* at 4 (Page ID #2512).  The court officer who reported that the jury did not alert him to any problems also reported that the jury was "very clearly divided into two groups this morning and they're angry with each other."  *Id*.  Despite the court officer's report around 8:00 a.m. or 9:00 a.m. that the jury was divided into two groups, at 10:37 a.m. that morning the jury came back with its verdict.  *Id.* at 6 (Page ID #2514).

The jury convicted Ricky and Katrina of one count of conspiracy to commit wire fraud (in violation of 18 U.S.C. § 1343) and one count of wire fraud (in violation of 18 U.S.C. § 1343).  Additionally, Ricky was convicted of two counts of major fraud against the United States (in violation of 18 U.S.C. § 1031), and Katrina was convicted of one count of major fraud against the United States.  R. 275 (Ricky Lanier Judgment at 1) (Page ID #5797); R. 273 (Katrina Lanier Judgment at 1) (Page ID #5787); *see also* R. 151 (Second Superseding Indictment at 1–19, 27–28) (Page ID #1456–74, 1482–83).

Just after the jury announced its verdict, defendants requested to interview the jurors and moved for a mistrial.  R. 212 (Trial Tr. at 11–12) (Page ID #2519–20).  Counsel pointed out that the jury apparently had been at an impasse but then returned a verdict a short while later, and that not long before the jury returned the verdict, one of the jurors reached out to a third party.  *Id.*  Counsel argued that "something . . . through that conversation or . . . through some other conversation that this juror apparently had, that she obviously violated the admonition that your honor has given repeatedly here, and that taints the jury verdict as to any of the guilty counts."

*Id.* The district judge denied this motion, reasoning that "[t]o the extent this juror attempted to have a discussion with a third party about this case, that attempt was unsuccessful," and consequently "[i]t would be mere speculation for the court to conclude from any of that that the juror in question or any juror had in fact had improper contact with any other person." *Id.* at 2526.

After the verdict, defendants requested various forms of relief, including a new trial and permission to interview jurors. First, Ricky Lanier filed a Motion for Permission to Interview Jurors, R. 213 (Mot. Permission to Interview Jurors) (Page ID #2538–48), which Katrina Lanier then joined, R. 214 (Mot. to Adopt Ricky Lanier's Mot. for Permission to Interview Jurors) (Page ID #2549–50). The district court denied the motion. R. 216 (Order) (Page ID #2557–61). Defendants then filed a joint Motion for New Trial & Renewed Motion for Permission to Interview Jurors. R. 223 (Mot. for New Trial & Renewed Mot. to Interview) (Page ID #2956–76). The district court denied this motion, as well. R. 237 (Order) (Page ID #4620–35).

During his post-trial investigation, Katrina Lanier's trial counsel learned that Juror 11 had also spoken with Nelson about her jury service on a prior occasion, before the phone call during jury deliberations. Juror 11 and Nelson ran into each other during the first week of the trial. R. 223-1 (Leonard Decl. at ¶ 5) (Page ID #2978). At that time, Juror 11 told Nelson that she was on a federal jury and mentioned some of the attorneys who were involved in the case. *Id.* Nelson did not report this earlier conversation when she called the district court to report that Juror 11 called her to discuss jury deliberations.

No one ever interviewed Juror 11 about the telephone call. *See* R. 212 (Trial Tr. at 3–4, 11–12) (Page ID #2511–12, 2519–20). No one ever interviewed any other member of the jury about whether Juror 11 discussed the call with her fellow jurors. *See id.* And although the district court talked by phone with Nelson and trial counsel interviewed her after the trial, no one ever had the opportunity to question Nelson in open court or under oath. *See id.*

After denying defendants' motions to interview jurors and for a new trial, the district court imposed sentences. The district court sentenced Ricky Lanier to forty-eight months of imprisonment, R. 283 (Sentencing Hr'g Tr. at 93) (Page ID #5906), and Katrina Lanier to thirty

months of imprisonment, *id.* at 117 (Page ID #5930), staggering the sentences because they have two minor children, R. 297 (Order Amending Judgment at 1) (Page ID #6176); *see also* R. 285 (Joint Motion to Allow Staggered Sentences at 1) (Page ID #5965). Both defendants timely appealed from the district court's final judgment.

## II. DISCUSSION

The district court has an obligation to investigate a colorable claim of external influence on the jury to determine whether any external influence occurred and, if so, whether it was prejudicial. *See Remmer v. United States*, 347 U.S. 227, 229–30 (1954). We review for abuse of discretion the district court's decision about whether to conduct a hearing regarding possible jury misconduct or external influence. *United States v. Lloyd*, 462 F.3d 510, 518 (6th Cir. 2006). The general rule is that "'[w]here a colorable claim of extraneous influence has been raised,'" the court must hold a *Remmer* hearing "to afford the defendant an opportunity to establish actual bias." *United States v. Davis*, 177 F.3d 552, 557 (6th Cir. 1999) (quoting *United States v. Herndon*, 156 F.3d 629, 635 (6th Cir. 1998)); *see also Lloyd*, 462 F.3d at 518 (quoting *United States v. Shackelford*, 777 F.2d 1141, 1145 (6th Cir. 1985)) ("When possible juror misconduct is brought to the trial judge's attention he has a duty to investigate and to determine whether there may have been a violation of the sixth amendment."). Yet a *Remmer* hearing is not necessary in every instance of possible unauthorized third-party contact. *See Davis*, 177 F.3d at 557. "[A]n allegation of an unauthorized communication with a juror requires a *Remmer* hearing only when the alleged contact presents a likelihood of affecting the verdict," such as when the allegation "involv[es] claims of 'intentional improper contacts or contacts that had an obvious potential for improperly influencing the jury.'" *United States v. Frost*, 125 F.3d 346, 377 (6th Cir. 1997) (quoting *United States v. Rigsby*, 45 F.3d 120, 123–24 (6th Cir. 1995)); *see also United States v. Williams*, 195 F.3d 823, 827–28 (6th Cir. 1999) (affirming the district court's decision not to conduct a *Remmer* hearing because the juror assured the court that she could remain impartial despite being familiar with defendant's company); *Shackleford*, 777 F.2d at 1145 (affirming the

district court's decision not to conduct a *Remmer* hearing because the juror had voted consistently throughout deliberations).**[1]**

Because this case "involv[es] claims of 'intentional improper contacts or contacts that had an obvious potential for improperly influencing the jury,'" declining to hold a *Remmer* hearing in this case was not a proper exercise of the trial court's discretion. *Frost*, 125 F.3d at 377 (quoting *Rigsby*, 45 F.3d at 123–24). There is no question that the third-party contact in this case was intentional and improper because the juror intentionally contacted the third party, Nelson, in order to discuss the case with her. For the same reason, the third-party contact in this case had an obvious potential for improper influence—the juror intentionally contacted the third-party, specifically seeking Nelson's input about the case. Unlike in most other cases of third-party contacts, the juror in this case was not the passive target of someone else's attempt to influence the jury. The juror in this case actively invited outside influence.

The prosecution argues that, because the district judge announced that Nelson asserted that she refused to discuss the case with the juror who contacted her, there is no suggestion of external influence on the juror. We cannot agree. Whether or not Nelson acted appropriately, the juror acted inappropriately in seeking outside input on the case. And because no one has ever questioned any member of the jury, we do not know the extent of the juror's misconduct in contacting third parties and discussing the case with outsiders or what impact the juror's misconduct involving extraneous communications had on the rest of the jury.

Moreover, although the fact that a juror instigated contact with a third party in order to discuss the case would be enough to require the district court to hold a *Remmer* hearing, this case presents at least two additional facts that reinforce the necessity of a *Remmer* hearing. First,

---

**[1]**Of course, generally there cannot be an inquiry into influences on the jury deliberations that are internal to those deliberations, such as "any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment." Fed. R. Evid. 606(b)(1). *But see Peña-Rodriguez v. Colorado*, 137 S. Ct. 855, 869 (2017) (carving out an exception to this "no-impeachment rule" for instances "where a juror makes a clear statement that indicates he or she relied on racial stereotypes or animus to convict a criminal defendant."). In this case, we are addressing possible "extraneous prejudicial information . . . improperly brought to the jury's attention" or "outside influence . . . improperly brought to bear on any juror." Fed. R. Evid. 606(b)(2)(A), (B). Pursuant to Federal Rule of Evidence 606(b)(2), there can be an inquiry into extraneous influence—indeed, pursuant to *Remmer*, there must be an inquiry into a colorable claim of potentially prejudicial extraneous influence.

despite Nelson's asserted instructions, Juror 11 did not alert the district court to the problem that she had called the assistant district attorney to discuss or even to the fact of the contact with the assistant district attorney.  Second, the jury came back with a verdict shortly after the juror's telephone call with the assistant district attorney, even though very recently—indeed that very morning—the jury apparently was divided into two groups and angry with each other.  Each of these facts suggests the possibility of external influence.  The district court abused its discretion by failing to hold a *Remmer* hearing to investigate possible external influence on the jury.

Because the district court abused its discretion by failing to conduct a *Remmer* hearing, we vacate defendants' convictions and remand the case for a *Remmer* hearing.  *See, e.g.*, *Davis*, 177 F.3d at 560; *Herndon*, 156 F.3d at 638.  During the hearing, attorneys for each side should have the opportunity to question Juror 11 and the rest of the jury to determine whether any external influence affected the jury's deliberations.  Attorneys for each side should also have the opportunity to question Nelson about her conversations with Juror 11.  We retain jurisdiction over defendants' cases.  *See United States v. Sylvester*, 143 F.3d 923, 935 (5th Cir. 1998).  Subject to review by this court, if the *Remmer* hearing reveals that any external influence prejudicially affected jury deliberations, defendants are entitled to a new trial, but if the *Remmer* hearing reveals that no external influence prejudicially affected jury deliberations, defendants' convictions must be reinstated.  *Cf. Remmer v. United States*, 350 U.S. 377, 378 (1956) (reviewing the trial court's ruling following the Supreme Court's earlier remand for a hearing).  If defendants' convictions are reinstated, this court then will review the sentencing issues that defendants raised in this appeal.

### III.  CONCLUSION

As set forth above, we **VACATE** defendants' convictions and **REMAND** the case to the district court for a *Remmer* hearing and further proceedings consistent with this opinion.  We **RETAIN** jurisdiction pending the district court's *Remmer* hearing.